| AOC-105<br>Rev. 1-07<br>Page 1 of 1<br>Commonwealth of Kentucky<br>Court of Justice   www.courts.ky.gov<br>CR 4.02; CR Official Form 1 | **CIVIL SUMMONS** | Case No. **19CI00825**<br>Court ☑ Circuit ☐ District<br>County Jefferson |

Case No. 19CI00825

**PLAINTIFF**
JEFFERSON CIRCUIT COURT
DIVISION TWO (2)

LINDA RAIZOR

VS.

*Liberty* LIFE ASSURANCE   CO. OF BOSTON
PO BOX 7213
LONDON KY 40742

**DEFENDANT**

Service of Process Agent for Defendant:
ANY OFFICER OR AGENT

_____
_____
_____
_____

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: __FEB - 7 2019__, 2____

DAVID L. NICHOLSON, CLERK

_____ Clerk
By: _____ D.C.

---

**Proof of Service**

This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:

_____

this ____ day of _____, 2____.

Served by: _____

_____ Title

# EXHIBIT A

NO. **19CI00825**

JEFFERSON CIRCUIT COURT
DIVISION _____

JEFFERSON CIRCUIT COURT
DIVISION TWO (2)

LINDA RAIZOR )
)
v. )
) COMPLAINT
)
)
LINCOLN NATIONAL LIFE )
INSURANCE CO. )
8801 INDIANA HILLS DRIVE )
OMAHA, NE 68114-4066 )
)
)
SERVE: )
SECRETARY OF STATE )
)
-and- )
)
LIBERTY LIFE ASSURANCE CO. OF BOSTON )
PO BOX 7213 )
LONDON KY 40742 )

SERVE:

ANY OFFICER OR AGENT

\*\*\* \*\*\* \*\*\*

Comes the Plaintiff, LINDA RAIZOR, by counsel, and for her cause of action against Defendant states as follows:

PARTIES AND VENUE

1. Plaintiff is a resident of Louisville, Jefferson County, Kentucky.

2. Defendant, Lincoln, (hereinafter "carrier" or "Defendant" or " Lincoln" ) is a corporation doing business in the Commonwealth of Kentucky. Defendant Liberty Life Assurance ("Liberty") is likewise a corporation doing business in the Commonwealth of Kentucky. Upon information and belief, and apparently, Lincoln and Liberty are co-administrators in this action as evidence by the attached "Denial Letter" dated Feb. 4, 2019. *See* "Exhibit 1".

# EXHIBIT A

3. This is an action brought by a participant to recover long term disability benefits ("LTD" respectively) due to her under the terms of an insurance plan governed by §502(e) of the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1132(e), which is more specifically, a contract for disability insurance and wage replacement benefits.

4. This Court has jurisdiction pursuant to §502(e) of the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1132(e).

## FACTS

5. Plaintiff was a full-time employee of National Vision, Inc. ("employer") for a sufficient time period so as to eligible for long term disability ("LTD") wage replacement benefits replacement coverage under the terms of an insurance contract identified as Claim #5937382.

6. As a full time employee, Plaintiff was eligible for, and was participating in the LTD disability plan ("plan") offered by employer.

7. At all times relevant to this Complaint, the Plan was administered by Defendants and at all relevant times Defendants remained the so called "plan administrator".

8. By virtue of Plaintiff's medical impairments, and according to medical personnel, it is apparent that Plaintiff is permanently and totally disabled.

9. During the appeal process Defendants compelled the Plaintiff to apply for Social Security Disability Benefits ("SSDI).

10. Plaintiff then applied for and was approved for LTD benefits and was paid for a short period. Subsequently, and for reasons that are medically mysterious, Defendants re-reviewed the file an opted to terminate further wag replacement benefits.

11. Plaintiff has thusly exhausted administrative remedies under the plan.

12. Defendants' in house medical review performed by the Defendants' "hired medical reviewer(s)", practitioner(s) of unknown qualifications, erroneously concluded that the Plaintiff was able to perform an occupation. The Defendants fail to offer a rational basis as to why it does not concur with a diagnosis of disability consistent with Plaintiff's treating physicians.

13. Defendants' in-house reviewing staff erroneously concluded that the Plaintiff was capable of

# EXHIBIT A

returning to work and to work full time, as he did before the onset of her disability. Furthermore, Defendants refused to consider all of the Plaintiff's medical ailments and combined effect on her to terminate benefits. Said action is in violation of Sixth Circuit jurisprudence.

14. Defendants' refusal to consider Plaintiff's combination of medical impairments, and the effect each has on the other, is error. The Claimant is entitled to have the combination of all impairments considered under the Plan. The Defendants so callously ignored substantive medical proof that they cannot now enjoy the, so-called, arbitrary and capricious standard of review despite plan language to the contrary, and the medical history should be reviewed *de novo*.

15. Defendants are legally unable to deny Plaintiff's benefits based on even its own medical and vocational findings.

16. Since Defendants compelled Plaintiff to apply for SSDI benefits it is bound by the decision of the SSA.

17. Any physician who has personally treated the Plaintiff has never questioned the permanency and totality of Plaintiff's disability.

18. Defendants' conclusions that Plaintiff is not totally disabled was arbitrary and capricious, based on faulty data, flies in the face of the longitudinal medical evidence from the treating sources, and was executed in violation of relevant provisions of the plan.

19. At all relevant times Defendants were acting under a conflict of interest as it was the entity which determined if the Plaintiff was disabled and the entity which is responsible for payment of LTD wage replacement benefits. Accordingly, the Plaintiff is entitled to discovery over and above that which is customarily permitted in cases litigated under the ERISA statute.

20. Since Plaintiff was awarded said SSDI benefits due to her medical condition. Defendants cannot ignored the finding of SSA without adequate explanation in its decision and thusly violated of sixth circuit jurisprudence. *Whitaker v. Lincoln Life and Accident Co.*, 404 F.3d 947 (6th Cir. 2005).

21. Due to Defendants' actions Plaintiff is entitled to discovery exceeding standard ERISA protocol.

COUNT 1

DENIAL IS IN VIOLATION OF ERISA STATUTE

EXHIBIT A

22. Pursuant to the ERISA statute Plaintiff is entitled to long-term disability benefits under the Plan.

23. Defendant has wrongfully denied Plaintiff LTD benefits and has breached the terms of the Plan under the dictates of the ERISA statute.

24. Defendant's decision to deny Plaintiffs benefits and their claim handling have been arbitrary and capricious and is not supported by substantial evidence, and is tantamount to a breach of contract, violating Plaintiff's expectations pursuant to the contract of wage replacement insurance.

WHEREFORE the Plaintiff prays as follows:

1. For payment of disability benefits due to her, calculated from the date benefits were ceased until the present, with interest to the extent permitted by law;

1. For attorney's fees and expenses that Plaintiff has incurred for enforcing her contractual rights as well as her ERISA rights;

2. For any and all equitable relief Plaintiff is entitled to under common law contract theory, tort, or under ERISA, including Defendants' assistance in remedying any damage its termination of benefits has caused respecting Plaintiff's credit history;

3. For any other attorney fees and costs expended in connection with the unlawful denial of benefits;

4. For any and all relief to which Plaintiff may be entitled under any legal claim, whether it be pursuant to a contract claim, state based statutory claims, federal ERISA based claims, or other claims that may arise once discovery is complete.

Respectfully submitted,

_____
ROBERT A. FLORIO
1500 Story Ave
Louisville, KY 40206
Counsel for Plaintiff
502-587-0228

EXHIBIT A

# EXHIBIT 1

EXHIBIT A



Lincoln Financial Group®

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5707

February 4, 2019

Dana Taylor
Sullivan Law Office
1500 STORY AVENUE
LOUISVILLE, KY 40205

RE: Long Term Disability (LTD) Benefits
National Vision, Inc
Claim #: 5937382
Claimant: Linda Raizor

Dear Dana Taylor:

We reviewed your appeal request for your client's Long Term Disability ("LTD") benefits and maintained the decision to deny benefits beyond July 2, 2018.

### Initial Claim Decision

Ms. Raizor submitted a claim for her absence from work as of June 21, 2016, as a result of a residual brain tumor (with associated complaints) and piriformis syndrome. LTD benefits were approved from September 20, 2016 through July 2, 2018. Benefits beyond July 2, 2018 were denied as the evaluation concluded Ms. Raizor was no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated July 2, 2018. Ms. Raizor was provided an opportunity to request an appeal review of the denial, stating the reasons why she felt that her claim should not have been denied, and submit additional information to support her claim. Specifically, Ms. Raizor was advised to submit the following information: "Treatment notes, diagnostic tests, procedure reports, therapy notes, medications prescribed, and restrictions and limitations to support her claim for disability benefits beyond July 2, 2018. She was also advised to submit any information pertaining to her Social Security Disability Application/Award, including medical examinations, reports, disability determination explanations, records conducted by the Social Security Administration (SSA), and/or a complete copy of the SSA's disability determination file and any other information she felt would support her claim."

### Appeal

In your letter of appeal dated November 6, 2018, you advised Ms. Raizor has been unable to perform her occupation since June of 2016 and has been receiving benefits thorough the relevant policy since September 20, 2016.

1 of 7

# EXHIBIT A

You advised Ms. Raizor would need visual acuity to perform the essential and material duties of her occupation as a optical apprentice. You advised Ms. Raizor's eye exam records from Dr. Wandzilak reflect her vision has gotten worse and she cannot focus or concentrate on a computer screen. Ms. Raizor has a residual brain tumor following surgery and radiation. The tumor abuts the left optic nerve and chaism which would cause Ms. Raizor to have blurred vision which would preclude her from doing her job as an optician.

You also advised Ms. Raizer suffers from piriformis syndrome on the left side, which causes her constant, shooting and stabbing pain that is only relieved by lying down.

In support of Ms. Raizor's claim, you submitted the following information:
- The office visit note dated March 14, 2017 from Dr. Wandzilak.
- The office visit notes dated April 24, 2017 through March 26, 2018 from Dr. Villanueva.
- The office visit notes dated July 20, 2017 through June 29, 2018 from Dr. Lerner.
- The office visit notes dated January 25, 2017 through March 1, 2017 from Dr. Quillo.

## Appeal Evaluation

During the claim evaluation of ongoing benefits, Ms. Raizor's claim was reviewed by Howard Grattan M.D., an independent physician board certified in Pain Management. Based on his review of the medical records, Dr. Grattan concluded:

> *The diagnoses supported by the medical evidence are lesion of the sciatic nerve of left lower limb, left piriformis syndrome, pain in the right arm, low back pain, and comorbid conditions of benign neoplasm of the brain, headache, and obesity. These diagnoses are supported by symptoms including bilateral flank pain, back pain, nausea, vision changes, and ringing in the ears; findings from physical examinations including tenderness over the left coccyx, a positive piriformis test on the left, and lumbar tenderness and tightness; a surgical history for emergency removal of a brain tumor in 2001, stereotactic radiosurgery in 2014; and diagnostic pathology including an MRI of the brain from March 5, 2018 revealing status post left frontotemporal parietal craniotomy with postoperative 1.7 x 1.3 cm area of encephalomalacia in the anterior tip of the left temporal lobe which was unchanged from her previous to MRI studies as well as an enhancing mass abutting the posterior left optic nerve and left side of the optic chiasm.*

> *From a physical medicine/rehabilitation and pain medicine perspective, impairment is not supported. While she has complaints of low back pain radiating to the left buttock as well as pain in the right arm, the medical file lacks any imaging studies of the lumbar spine or electrodiagnostic studies to support impairment. Furthermore, physical examination findings of tenderness and tightness over the lumbar region with a positive piriformis test do not support restrictions and limitations.*

In addition, Ms. Raizor's claim was reviewed by Paul Kaloostian M.D., an independent physician board certified in Neurological Surgery. Based on his review of the medical records, Dr. Kaloostian concluded:

> *Ms. Raizor is a 55-year-old female with benign neoplasm of brain. Dr. Sun of neurosurgery*

saw her on July 11, 2016 with lesion in the sella, left cavernous sinus and sphenoid sinus consistent with meningioma. She had fractionated radiotherapy from March of 2016 through June of 2016. There were worsening headaches and vision problems in left eye. MRI Brain showed no change in the tumor size. Dr. Villanueva of neurosurgery saw claimant on April 24, 2017 and noted headaches, blurry vision, and facial numbness. Dr. Villanueva saw the claimant November 29, 2017 and noted ringing in ears and visual changes in left eye. Neurological examination was unremarkable. Ms. Raizor was continued off work until January 17, 2018. The March 5, 2018 MRI brain noted prior left surgical changes with residual recurrent meningioma noted.

Based on the documentation provided, there is post-operative headaches and blurry vision but unremarkable examination noted per records provided. Imaging of the brain shows stable recurrent meningioma without need for tumor re excision per notes. Therefore, no acute pathology noted clinically and radiographically. Taken together, functional impairment is not supported.

During the review of the appeal, Ms. Raizor's was reviewed by Charles W. Brock, M.D., an independent physician board certified in Neurology and Pain Medicine. Based on his review of the medical records, Dr. Brock concluded:

From a neurologic and pain medicine perspective, the available medical records provided for review does not support delineation of any restrictions or limitations regarding function as the available medical records document normal physical examination in regards to cranial nerves, motor, sensory, reflex, coordination. As such, there is no indication of severity of illness based on documented physical examination that would support delineating limitations.

The available medical records document serial neurologic examinations as demonstrating normal findings. There is no indication of any abnormal motor, sensory, reflex, or coordination. Cranial nerves, no cognitive deficit in reference to the claimant's neurologic ability to support any restrictions/limitations regarding functionality in my medical opinion. The available medical records otherwise do not indicate any restrictions or limitations relevant to the time period of July 2, 2018 to the present as there is no indication of any focal neurologic abnormalities in regards to cognition, motor, sensory, reflex, and coordination based on documented serial neurologic examinations that support the severity of abnormality to support restrictions/limitations.

The available medical records do not indicate any cognitive or physical side effects related to medications.

The available medical records document serial neurologic examinations as demonstrating normal findings. There is no indication of any abnormal motor, sensory, reflex, or coordination. Cranial nerves, no cognitive deficit in reference to the claimant's neurologic ability to support any restrictions/limitations regarding functionality in my medical opinion.

The available medical records otherwise do not indicate any restrictions or limitations relevant to the time period of July 2, 2018 to the present as there is no indication of any focal neurologic abnormalities in regards to cognition, motor, sensory, reflex, and

EXHIBIT A

> *coordination based on documented serial neurologic examinations that support the severity of abnormality to support restrictions/limitations.*

In addition, during the review of the appeal, Ms. Raizor's claim was reviewed by Nancy Huynh, M.D., an independent physician board certified in Ophthalmology. Based on her review of the medical records, Dr. Huynh concluded:

> *From an ophthalmology standpoint, the medical evidence does not support any diagnoses causing functional impairment from July 2, 2018 to the present. The claimant has a residual tumor that abuts the margin of the left optic nerve just posterior to the optic canal (per the MRI done on March 5, 2018). However, there is no documentation of objective visual impairment in the medical records. Her visual acuity and visual fields were noted to be within normal limits. The claimant's visual acuities were 20/20 in both eyes during her ophthalmology visit with Dr. Wandzilak on March 14, 2017. During her visit with Dr. Villanueva on April 27, 2017, visual acuities were noted to be "normal" and confrontational visual fields were full. Although Dr. Wandzilak noted in her ocular history of a visual field defect in the left eye since 2001, there was no formal visual field testing documenting this defect in the medical records.*
>
> *There is no functional impairment from an ophthalmology perspective. based on the medical records provided for review, the claimant does not have visual impairment that would prevent her from sustaining a full-time work capacity. Her documented visual acuities were 20/20 in both eyes (as noted on March 14, 2017 by Dr. Wandzilak) and her confrontational visual fields were full (as noted on April 27, 2017 by Dr. Villanueva).*

Our role in reviewing Ms. Raizor's file is to determine whether her medical condition and the medical documentation contained in her file supports that she is unable to perform the material and substantial duties of her own occupation beyond July 2, 2018. We are not required to ensure the availability of this occupation or that she return to active employment with her former employer in the same or different position.

We are aware that Ms. Raizor's claim for Social Security Disability Income benefits is being processed. It should be noted that any ruling by the Social Security Administration, in and of itself, does not determine entitlement to benefits under the terms and conditions of the National Vision, Inc.'s Long Term Disability Policy.

## Conclusion

We conducted a thorough and independent review of Ms. Raizor's entire claim. In summary, we acknowledge that she may have continued to experience some symptoms associated with her conditions beyond July 2, 2018. However, the information does not contain abnormal exam findings, diagnostic test results or other forms of medical documentation supporting her impairments and symptoms remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering her unable to perform the duties of her occupation after that date.

Having carefully considered all of the information submitted in support of Ms. Raizor's claim, our position remains that proof of her continued disability in accordance with the Policy provisions after July 2, 2018 has not been provided. Therefore, no further benefits are payable.

## EXHIBIT A

This claim decision reflects an evaluation of the claim facts and Policy provisions.

## Policy Provisions

In order to continue receiving benefits, Ms. Raizor must satisfy the requirements of all Policy provisions that state, in part:

*"Disability" or "Disabled", with respect to Long Term Disability, means:*

*1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*
    *i. if the Covered Person is eligible for the 24 Month Own Occupation benefit, "Disability" or "Disabled" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*

    *ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

*"Material and Substantial Duties", with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

*"Own Occupation", with respect to Long Term Disability, means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.*

*"Proof" means the evidence in support of a claim for benefits and includes, but is not limited to, the following:*
*1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;*
*2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and*
*3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.*

*Proof must be submitted in a form or format satisfactory to Liberty.*

## Disability Benefits

*When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty Proof of continued:*

EXHIBIT A

*1. Disability;*
*2. Regular Attendance of a Physician; and*
*3. Appropriate Available Treatment.*

*The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether the Covered Person is Disabled, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.*

*Discontinuation of the Long Term Disability Benefit*
*The Monthly Benefit will cease on the earliest of:*
*...*
*9. the date the Covered Person is no longer Disabled according to this policy;*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, Ms. Raizor was entitled to appeal the decision made by Liberty Life Assurance Company of Boston (Liberty), and to submit any additional information she wished to be considered as part of the appeal. Liberty has conducted a full and fair review of her appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, Ms. Raizor's administrative right to review has been exhausted; no further review will be conducted by Liberty and her claim will remain closed. Ms. Raizor may request to receive, free of charge, copies of all documents relevant to her claim. Ms. Raizor have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

The National Vision, Inc. Group Disability Income Policy contains the below provision:
*Legal Proceedings*
*A claimant or the claimant's authorized representative cannot start any legal action:*
*1. until 60 days after Proof of claim has been given; or*
*2. more than one year after the time Proof of claim is required.*

The employer's policy has a contractual limitations period of one year, which means that a lawsuit must be brought within one years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is April 4, 2020.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Liberty Life Assurance Company of Boston rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Liberty Life Assurance Company of Boston are based on the provisions outlined in National Vision, Inc. Group Disability Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

# EXHIBIT A

If you/ Ms. Raizor require language translation assistance, please contact Liberty Life to initiate a service provided free of charge to assist with understanding Ms. Raizor's claim and appeal rights.

如果您需要翻译方商的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł ninízingo saad hosinithí' dóó ná'ookąąh níiní'ąągo naaltsoos ninitłsoozígíí hazhó'ó bik'idi'deeshtįįł ninízingo doo báąh ílínígóó níká a'doowoł éí biniiyé shił hodiíłnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Lisa MacAllister
Appeal Review Consultant
Phone No.: (888) 437-7611 Ext. 16400
Secure Fax No.: (603) 334-5707

EXHIBIT A



DAVID L. NICHOLSON
JEFFERSON COUNTY CIRCUIT C(
LOUIS D. BRANDEIS HALL OF J\
600 WEST JEFFERSON STREET
LOUISVILLE, KENTUCKY 40202

7018 1830 0000 2623 0588



Liberty Life Ass. Co.
P O Box 7213
Louisville, Ky. 40742

**EXHIBIT A**